UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO. 22-146 |
| v. | * | SECTION: "R" |
| KAREN CARTER PETERSON | * | |

\* \* \*

## FACTUAL BASIS

The defendant, **KAREN CARTER PETERSON** (hereinafter, the "defendant" or "**PETERSON**"), has agreed to plead guilty to Count One of the bill of information currently pending against her, charging **PETERSON** with wire fraud, in violation of Title 18, United States Code, Sections 1343 and 2. Should this matter proceed to trial, both the Government and the defendant, **KAREN CARTER PETERSON**, do hereby stipulate and agree that the following facts set forth a sufficient factual basis for the crime to which the defendant is pleading guilty. The Government and the defendant further stipulate that the Government would have proven, through the introduction of competent testimony and admissible, tangible exhibits, the following facts beyond a reasonable doubt to support the allegations in the bill of information now pending against the defendant:

### *Introduction*

The Government would show that **PETERSON** was born, raised, and has lived since at least 1992 in New Orleans, Louisiana, within the Eastern District of Louisiana. From about 1999 through 2010, **PETERSON** served as a member of the Louisiana House of Representatives, for District 93. In about 2010, **PETERSON** was elected to the Louisiana State Senate from the 5th District, which encompasses parts of Orleans and Jefferson Parishes, and served as a Louisiana State Senator from about 2010 until about April 8, 2022.

AUSA JG
Defendant
Defense Counsel

The Government would further show that as a Louisiana State Senator, **PETERSON** served four-year terms between elections. **PETERSON** formed and maintained a campaign organization, the "Karen Carter Peterson Campaign Fund ("KCPCF")," to solicit and raise campaign funds from individual and corporate donors. The campaign funds were solicited on the representations and premise that the funds would be used to facilitate **PETERSON'S** reelection for the position of State Senator for the 5th District.

The Government would further establish through eyewitness testimony and documentary evidence that **PETERSON** had and maintained signatory authority over the Karen Carter Peterson Campaign Fund account at Crescent Bank and Trust bearing account number xxx4337.

The Government would further establish through eyewitness testimony and documentary evidence that "State Political Party A" was a political organization that was, among other things, responsible for raising funds on behalf of the election campaigns of its members to defray expenses associated with such campaigns. State Political Party A was led by an executive committee, overseen by a Chair, who was selected by the membership of State Political Party A's Central Committee. State Political Party A also had a permanent staff who ran its day-to-day operations. Funds raised by State Political Party A were regularly deposited into accounts at various financial institutions, including a bank account at Hancock Whitney National Bank bearing account number x7534. **PETERSON** served as Chair of State Political Party A between about 2012 and 2020. As Chair, **PETERSON** oversaw the strategic decision-making, operations, outreach, and direction of State Political Party A and supervised State Political Party A's permanent staff, including individuals who had signatory authority of the State Political Party A's financial accounts.


AUSA
Defendant
Defense Counsel

*Campaign Finance Laws of the State of Louisiana*

A representative of the Louisiana Board of Ethics would establish that under the Campaign Finance Laws of the State of Louisiana ("Campaign Finance Laws"), campaign contributions for the position of Louisiana State Senator could only be used to support, oppose, or otherwise influence the nomination or election of a person to public office. *See* La. Rev. Stat. 18:1483(6)(a).

The Campaign Finance Laws strictly prohibited the use of campaign funds by any elected public office holder or any candidate for public office, including the position of Louisiana State Senator, to pay for personal expenses unrelated to a political campaign or the holding of public office or party position. *See* La. Rev. Stat. 18:1505.2(I)(1).

The Campaign Finance Laws required public officials and candidates for the position of Louisiana State Senator to designate a bank, savings and loan institution, or money market mutual fund as a campaign depository. All campaign receipts had to be deposited into an account maintained at the depository. All campaign expenditures, except for non-personal service payments (*i.e.*, "petty cash") in amounts less than $100, had to be paid by check drawn on the account. *See* La. Rev. Stat. 18:1495.2(D).

The Campaign Finance Laws also required holders of the office of Louisiana State Senator and candidates for the position of Louisiana State Senator to keep and maintain records of every contribution, including the sale of tickets to testimonials and fundraising events, with the exception of purchases of campaign paraphernalia in the amount of $25 or less. *See* La. Rev. Stat. 18:1495.3.

The Campaign Finance Laws required elected public office holders and candidates for the position of Louisiana State Senator to file with the Louisiana Board of Ethics, either electronically or via mail, detailed annual reports of all campaign account activity. The annual reports had to

3

AUSA JG
Defendant
Defense Counsel BC

specify all contributions received and expenditures made from a campaign account, by or on behalf of such public office holder or candidate.  *See* La. Rev. Stat. 18:1495.5.

A representative from the Louisiana Board of Ethics would testify, and documentary evidence would be introduced to prove, that **PETERSON** arranged to file her campaign finance reports electronically.  After **PETERSON** reviewed and approved each year's campaign finance report, the report was filed electronically and made publicly available.

### *Misuse of KCPCF Funds*

The Government would introduce eyewitness testimony to establish that Person 1, Person 2, Person 3, and Person 4 were friends and associates of **PETERSON**.

The Government would introduce eyewitness testimony and documentary evidence that between about November 25, 2013, and about March 5, 2020, **PETERSON** devised a scheme to defraud the KCPCF by diverting, and causing Person 1, Person 2, Person 3, and Person 4 to divert, campaign funds from the KCPCF to **PETERSON'S** personal use for the purpose of obtaining and using money and property from contributors to the KCPCF by means of materially false and fraudulent representations and promises.  At least a substantial portion of the funds were spent gambling at casinos, both before and after **PETERSON'S** gambling addiction diagnosis.  These campaign funds were solicited and donated to **PETERSON** based on representations made by **PETERSON** and her assigns that the funds would be used to facilitate **PETERSON'S** reelection for State Senator for the 5th District.

**PETERSON** used the funds from the KCPCF to pay for personal expenses unrelated to her campaign or the holding of public office and, in the course of soliciting additional contributions, failed to disclose to potential contributors that **PETERSON** had already used funds contributed to the KCPCF for her personal benefit.  In furtherance of her scheme to defraud

4

AUSA _____
Defendant _____
Defense Counsel _____


donors and the KCPCF, **PETERSON** caused the public filing of false and misleading campaign finance reports that mischaracterized expenditures as being for legitimate purposes related to her campaign or the holding of public office, such as providing legislative assistance, but were, in fact, unrelated to those purposes, and were diverted to **PETERSON'S** personal use, including to fund her regular gambling activities at casinos throughout the United States.

The Government would introduce testimony and documentary evidence that **PETERSON** misused funds from the KCPCF by writing checks to her friends and associates, specifically Person 1, Person 2, Person 3, and Person 4, directing the recipients to cash the checks at financial institutions in the New Orleans, Louisiana area, within the Eastern District of Louisiana, and give **PETERSON** the proceeds from the cashed checks. Occasionally, **PETERSON** allowed the individuals cashing the checks to keep a small portion of the proceeds. **PETERSON** then used the remaining cash proceeds to pay for personal expenses, including gambling-related expenses, unrelated to her campaign or the holding of public office. A representative of Crescent Bank and Trust would establish that the process of cashing each of these checks caused the transmission by wire of one or more writings, signs, signals, and sounds in interstate commerce.

The Government would further establish that on numerous occasions between about November 25, 2013, and March 5, 2020, **PETERSON** engaged in the above-described scheme, in which she caused others to cash checks drawn on the KCPCF and give her all or most of the proceeds which she then used to pay for expenses unrelated to her campaign or the holding of public office. For example, on or about March 15, 2018, **PETERSON** wrote a check from the KCPCF account held at Crescent Bank and Trust in the amount of $4,500 to Person 1, claiming that it was compensation for Person 1's provision of "legislative assistance." In truth and in fact, Person 1 provided no such assistance. Thereafter, **PETERSON** met Person 1 in or near the

5


AUSA  
Defendant  
Defense Counsel

parking lot of a bank and gave Person 1 the check. Person 1 then entered the bank, cashed the check, and gave **PETERSON** the proceeds in cash. In total, between about November 25, 2013, and March 5, 2020, **PETERSON** utilized the above-described scheme to divert and convert to her personal use, for personal expenses unrelated to her campaign or the holding of public office, approximately $94,250 that had been donated by contributors to her campaign for the purpose of her reelection and solicited by **PETERSON** for that same purpose.

### *Misuse of State Political Party A's Funds*

The Government would introduce eyewitness testimony to establish that Person 5 and Person 6 were friends and associates of **PETERSON**.

Additionally, the Government would introduce documentary evidence in the possession of the Federal Bureau of Investigation and the Internal Revenue Service – Criminal Investigation, as well as eyewitness testimony that during **PETERSON'S** tenure as Chair of State Political Party A, she used her position to divert and cause funds to be diverted from State Political Party A to her and for her personal benefit.

Specifically, the Government would establish that in about Fall 2019, in her capacity as Chair of State Political Party A, **PETERSON** chose entities operated by her associates to be retained by State Political Party A purportedly to provide campaign-related services. **PETERSON** determined the amount to be paid to each entity. Thereafter, **PETERSON** instructed subordinate representatives of State Political Party A to issue payments to entities, including Company 1, Company 2, Company 3, and Company 4 (collectively, the "Companies"),[1] for the purported provision of campaign-related services. **PETERSON** represented to State

---

[1] Company 1 was an entity owned, controlled, and operated by Person 5. Company 2 was an entity owned, controlled, and operated by Person 6. Company 3 and Company 4 were entities owned, controlled, and operated by Person 2.

6

AUSA _JG_
Defendant
Defense Counsel

Political Party A that these payments were for a campaign purpose. In reality, the Companies provided either no or minimal services for State Political Party A. **PETERSON** willfully and wrongfully directed the Companies to remit a portion of the funds paid to them by State Political Party A to **PETERSON** through either checks drawn on the accounts of the Companies or in cash.

As such, the Government would establish that in furtherance of **PETERSON'S** scheme to defraud State Political Party A as described above, the money **PETERSON** received came from State Political Party A funds that were deposited into the bank accounts of entities, including Company 1, Company 2, Company 3, and Company 4. The process of depositing each check from State Political Party A by the Companies and transferring the funds to **PETERSON** caused the transmission by wire of a writing, sign, signal, and sound in interstate commerce. In total, between about October 7, 2019, and April 4, 2020, **PETERSON** received approximately $53,106.93 of funds from State Political Party A through the fraudulent scheme described above.

The Government and the defendant agree to stipulate that, for purposes of sentencing, the total readily provable loss amount that **PETERSON** diverted from the KCPCF and State Political Party A due to the aforementioned scheme was approximately $147,356.93.

The above facts derive from an investigation conducted by, and would be proven at trial by credible testimony from, Special Agents from the Federal Bureau of Investigation, the Internal Revenue Service – Criminal Investigation, as well as other witnesses, and documents in the possession of the FBI.

AUSA 
Defendant
Defense Counsel

*Limited Nature of Factual Basis*

This proffer of evidence is not intended to constitute a complete statement of all facts known by **KAREN CARTER PETERSON** and the Government. Rather, it is a minimum statement of facts intended to prove the necessary factual predicate for her guilty plea. The limited purpose of this proffer is to demonstrate that there exists a sufficient legal basis for the plea of guilty to the charged offense by **KAREN CARTER PETERSON**.

**APPROVED AND ACCEPTED:**

_____  8/1/22
KAREN CARTER PETERSON       Date
Defendant

_____  8/1/22
BRIAN J. CAPITELLI          Date
(Louisiana Bar No. 27398)
Attorney for Defendant Peterson

_____  8-1-22
JORDAN GINSBERG             Date
(Illinois Bar No. 6282956)
Assistant United States Attorney

_____  8-1-22
JONATHAN SHIH               Date
(New York Bar No. 4508669)
Assistant United States Attorney