

NATIONAL CENTER FOR RESPONSIBLE GAMING

# The Evolving Definition of Pathological Gambling in the DSM-5

By Christine Reilly and Nathan Smith
National Center for Responsible Gaming

One of the most anticipated events in the mental health field is the publication of the fifth edition of the American Psychiatric Association's (APA) Diagnostic and Statistical Manual of Mental Disorders (DSM) in 2013. As the key reference book for mental health professionals, the DSM contains descriptions, symptoms and other criteria for diagnosing mental disorders. According to the APA:

> These criteria for diagnosis provide a common language among clinicians — professionals who treat patients with mental disorders. By clearly defining the criteria for a mental disorder, the DSM helps to ensure that a diagnosis is both accurate and consistent; for example, that a diagnosis of schizophrenia is consistent from one clinician to another, and means the same thing to both of these clinicians, whether they reside in the U.S. or other international settings.[1]

The APA also states that another important role of the DSM is in the area of research:

> Only by having consistent (reliable) diagnoses can researchers compare different treatments for similar patients, determine the risk factors and causes for specific disorders, and determine their incidence and prevalence rates. DSM disorders are also used as the basis for treatment indications by the U.S. Food and Drug Administration (FDA) for clinical Practice Guidelines.[1]

The DSM diagnosis criteria are used by clinicians to report disorders to insurers for reimbursement, and to public health authorities for causes of illness and death.

This white paper will briefly address the evolving nature of the DSM, the current diagnostic code for pathological gambling (PG) and the proposed changes for the disorder in the DSM-5.

## EVOLVING NATURE OF THE DSM

The DSM is not a static document. It has been periodically reviewed and significantly revised since the publication of *DSM-I* in 1952. New research in neurology, genetics, behavioral sciences, epidemiology and other scientific areas have dramatically expanded our understanding of mental illnesses and led to changes in the DSM.

**HIGHLIGHTS**

- The definition of pathological gambling (PG) in the *DSM-IV* (first published in 1994) is the current diagnostic code. To be diagnosed as a pathological gambler according to the *DSM-IV*, an individual must meet at least five of the 10 diagnostic criteria, and all criteria are granted equal weight.
- For the upcoming version of the DSM, the DSM-5 work group has proposed that PG should be renamed "gambling disorder" and moved to the category for alcohol and drug use disorders.
- Based on empirical evidence, the DSM-5 work group also proposed to change the diagnosis of gambling disorder by eliminating the "illegal acts" criterion.
- The threshold for a diagnosis of gambling disorder will be lowered from five to four symptoms.



EXHIBIT K

▶ *The Evolving Definition of Pathological Gambling*

According to the APA, the process for revising the DSM was guided by four principles:[1]

1. The highest priority is clinical utility — that is, making sure the manual is useful to those who diagnose and treat patients with mental illness, and to the patients being treated.
2. All recommendations should be guided by research evidence.
3. Whenever possible, the DSM-5 should maintain continuity with previous editions.
4. No *a priori* restraints should be placed on the level of change permitted between the *DSM-IV* and the DSM-5.

The APA charged those with revising the manual to consider the impact that any changes would have on clinical practice, prevalence rates and other important factors. At the same time, the task force was instructed to consider the diagnostic advances that would be made through implementation of new scientific knowledge and clinical understanding.[1]

## THE HISTORY OF PATHOLOGICAL GAMBLING (PG)

PG was added to the DSM in 1980 largely due to the efforts of Dr. Robert Custer, who had treated pathological gamblers and written about their illness for several years. The original diagnostic criteria included in the *DSM-III* were not tested beforehand; the diagnosis was based on Custer's clinical experience and that of other treatment professionals.[2] The *DSM-III* criteria began with a statement about the individual experiencing progressive loss of control and then listed seven items, with an emphasis on damage and disruption to the individual's family, personal or vocational pursuits and money-related issues. In this edition, PG was classified as an impulse control disorder.

In the next edition *(DSM-IV)*, the PG criteria were revised to reflect its similarity to substance dependence, such as the addition of "repeated unsuccessful attempts to control, cut back or stop gambling."[3]

To be diagnosed as a pathological gambler according to the *DSM-IV*, an individual must meet at least five of the 10 diagnostic criteria, and all criteria are granted equal weight. See the box below for the *DSM-IV's* diagnostic criteria.

Additionally, the *DSM-IV* noted that the excessive gambling behavior might be an indication of a manic episode and, therefore, bipolar disorder would be the primary diagnosis. This notation indicated that, even at this early stage, the comorbidity of PG with other psychiatric problems was recognized. Later research by the National Comorbidity Study Replication would verify that 74 percent of cases where the individual with PG meets criteria for another lifetime disorder, at least one other such disorder began at an earlier age than PG.[4]

---

**DSM-IV DIAGNOSTIC CRITERIA FOR GAMBLING DISORDERS**

1. A preoccupation with gambling (e.g., preoccupation with reliving past gambling experiences, handicapping or thinking of ways to get money with which to gamble)
2. A need to gamble with increasing amounts of money in order to achieve the desired level of excitement
3. Repeated unsuccessful efforts to control, cut back or stop gambling
4. Feels restless or irritable when attempting to cut down or stop gambling (withdrawal symptoms)
5. Uses gambling as a way of escaping from problems or of relieving a dysphoric mood (e.g., feelings of hopelessness, guilt, anxiety and depression)
6. After losing money gambling, often returns another day to get even ("chasing" one's losses)
7. Lies to family members, therapist or others to conceal the extent of one's involvement with gambling
8. Has committed illegal acts such as forgery, fraud, theft or embezzlement to finance gambling
9. Has jeopardized or lost a significant relationship, job or educational or career opportunity because of gambling
10. Relies on others to provide money to relieve a desperate financial situation caused by gambling

---

▶ *The Evolving Definition of Pathological Gambling*

## CRITIQUE OF *DSM-IV*'S DEFINITION OF PG

Since 1994, researchers and clinicians have identified a number of shortcomings in the *DSM-IV* regarding PG.

First, the *DSM-IV* offered a clinical description with little empirical support outside of a treatment environment. Because the majority of pathological gamblers never seek formal treatment, a clinical description that is primarily based on observing those who do can be problematic, particularly when attempting to define the nature and origins of PG and trying to estimate its prevalence.[2]

Second, the *DSM-IV* recognized only the presence or absence of a clinical disorder, although evidence suggests that gambling problems exist on a continuum and that subclinical instances of PG are more prevalent. Subclinical pathological gamblers, commonly known as problem gamblers, have been defined as having difficulties as a result of their gambling but do not fulfill the five criteria for a diagnosis. Other labels used to describe this group are "at-risk," "level 2" and "probable pathological."[5]

Third, many have questioned the inclusion of PG under the impulse-control disorders classification, citing important differences between the disorders. As Shaffer and Korn observed, individuals with kleptomania and pyromania (both impulse control disorders) feel overwhelmed by an impulse to act and often report a sense of relief after having acted. In contrast, pathological gamblers, while in action, often find their gambling enjoyable and only after the gambling is terminated or losses are incurred do pathological gamblers begin to feel distress.[6]

## CHANGES FOR PG IN DSM-5

### Reclassification: From Impulse Control Disorder to Addiction

In the *DSM-IV*, PG was classified under the section titled, "Impulse Control Disorders Not Elsewhere Classified," along with Compulsive Hair Pulling (Trichotillomania); Intermittent Explosive Disorder; Kleptomania; and Pyromania. The DSM-5 work group proposed that PG be moved to the category Substance-Related and Addictive Disorders.[7]

The rationale for this change is that the growing scientific literature on PG reveals common elements with substance use disorders. Many scientists and clinicians have long believed that problem gamblers closely resemble alcoholics and drug addicts, not only from the external consequences of problem finances and destruction of relationships, but, increasingly, on the inside as well.[7] According to Dr. Charles O'Brien, chair of the Substance-Related Disorders Work Group for DSM-5, brain imaging studies and neurochemical tests have made a "strong case that [gambling] activates the reward system in much the same way that a drug does."[8] Pathological gamblers report cravings and highs in response to their stimulus of choice; it also runs in families, often alongside other addictions.[9] Neuroscience and genetics research has played a key role in these determinations.

Internet addiction was considered for this category, but work group members decided there was insufficient research data for it to be included. Another so-called behavioral addiction, "sex addiction," also was not included because the work group found no scientific evidence that "reward circuitry is operative in the same way as in addictive areas."[9]

*The Evolving Definition of Pathological Gambling*

### Renaming: From PG to Gambling Disorder

Officially changing the name to "Gambling Disorder" is a welcome revision for many researchers and clinicians who have expressed concern that the label "pathological" is a pejorative term that only reinforces the social stigma of being a problem gambler.[5]

### Changes in Diagnostic Criteria and Lowering of Threshold for a Diagnosis

One major change in the DSM-5's clinical description of gambling disorders is the elimination of the criterion "has committed illegal acts such as forgery, fraud theft or embezzlement to finance gambling." The rationale for this change is the low prevalence of this behavior among individuals with gambling disorder. In other words, no studies have found that assessing criminal behavior helps distinguish between people with a gambling disorder and those without one.[10] Studies suggest that its elimination will have little or no effect on prevalence rates and little effect on diagnosis. However, although committing illegal acts will no longer be a stand-alone criterion for diagnosis, the text will state that illegal acts are associated with the disorder. In particular, the criterion related to lying to others to cover up the extent of gambling will be described to include specific mention of illegal activities as one potential form of lying.[11]

Other changes in the criteria are as follows:

- "Is preoccupied with gambling" will be "Is often preoccupied with gambling" to clarify that one need not be obsessed with gambling all of the time to meet this diagnostic criteria.
- "Gambles as a way to escape from problems" will be "Gambles when feeling distressed."
- In the text accompanying the criteria, "chasing one's losses" is clarified as the frequent, and often long-term, "chase" that is characteristic of gambling disorder, not short-term chasing.

The DSM-5 work group observed that several empirical studies have supported lowering the threshold for a more accurate diagnosis of a gambling disorder from five to four criterion. For example, Stinchfield[12] found that a cutoff score of four made modest improvements in classification accuracy and, most importantly, reduced the rate of false negatives.

Another recent study conducted in France found that the DSM-5 criteria (the *DSM-IV* criteria without the illegal acts criterion and with a cutoff of four symptoms) performed better than the *DSM-IV* criteria alone, the *DSM-IV* criteria without the illegal acts criterion and a new instrument based on the DSM criteria for substance abuse.[13]

Finally, to diagnose a gambling disorder, the critiera that are displayed among the individual must occur within a 12-month period, unlike the *DSM-IV* which did not provide a time period for symptoms. In other words, if the person had two symptoms years ago and two symptoms in the past year, he or she would not qualify for a diagnosis.[11]

## Implications for Research and Clinical Applications

The DSM-5 diagnostic code for gambling disorders raises a number of issues and questions for both investigators and clinicians:

- Will the reclassification of gambling disorders with alcohol and drug use disorders result in greater coverage for treatment of this disorder by health insurance?
- Will the reclassification increase public health awareness of gambling disorders, and increase screening in substance use disorders settings?
- Will the reduced threshold for a diagnosis alter the rate of gambling disorders substantially in future studies? Although preliminary examination of this issue indicates that the change will be negligible, future prevalence surveys will work to answer this question.
- Will the elimination of the "illegal acts" criterion diminish "the potential heterogeneity among people who satisfy the diagnostic code for a gambling disorder?"[14]

These are just a few examples of questions that will inspire further research in the continuing quest to understand and treat gambling disorders.

## REFERENCES

1. American Psychiatric Association. *DSM-5: The Future of Psychiatric Diagnosis.* 2010; www.dsm5.org. Accessed August 31, 2012.
2. National Research Council. *Pathological Gambling: A Critical Review.* Washington, D.C.: National Academy Press; 1999.
3. Gerstein D, Murphy S, Toce M, et al. *Gambling Impact and Behavior Study: Report to the National Gambling Impact Study Commission.* Chicago: National Opinion Research Center;1999.
4. Kessler RC, Hwang I, LaBrie R, et al. DSM-IV pathological gambling in the National Comorbidity Survey Replication. *Psychol Med.* Sep 2008;38(9):1351-1360.
5. Shaffer HJ, Hall MN, Vander Bilt J. *Estimating the prevalence of disordered gambling behavior in the United States and Canada: A meta-analysis.* Boston: Presidents and Fellows of Harvard College; December 15 1997.
6. Shaffer HJ, Korn DA. Gambling and related mental disorders: a public health analysis. *Annu Rev Public Health.* 2002;23:171-212.
7. American Psychiatric Association. *DSM-IV: Diagnostic and Statistical Manual of Mental Disorders.* Fourth ed. Washington, DC: American Psychiatric Association; 1994.
8. Holden C. Behavioral addictions debut in proposed DSM-V. *Science.* 2010;327(5968):935.
9. Potenza MN, Xian H, Shah K, Scherrer JF, Eisen SA. Shared genetic contributions to pathological gambling and major depression in men. *Archives of General Psychiatry.* Sep 2005;62(9):1015-1021.
10. Strong DR, Kahler CW. Evaluation of the continuum of gambling problems using the DSM-IV. *Addiction.* 2007;102(5):713-721.
11. Petry NM, Blanco C, Auriacombe M, et al. An Overview of and Rationale for Changes Proposed for Pathological Gambling in DSM-5. *J Gambl Stud.* 2013.
12. Stinchfield R. Reliability, validity, and classification accuracy of a measure of DSM-IV diagnostic criteria for pathological gambling. *Am J Psychiatry.* 2003;160(1):180-182.
13. Denis C, Fatseas M, Auriacombe M. Analyses related to the development of DSM-5 criteria for substance use related disorders. An assessment of Pathological Gambling criteria. *Drug Alcohol Depend.* Apr 1 2011;122(1-2): 22-27.
14. Shaffer HJ, Martin R. Disordered gambling: etiology, trajectory, and clinical considerations. *Annu Rev Clin Psychol.* 2011; 7: 483-510.

**About the authors...**

**Christine Reilly** is senior research director of the National Center for Responsible Gaming (NCRG). Reilly joined the staff of the NCRG in 1997 and previously served as the executive director of the Missouri Humanities Council.

**Nathan Smith** is program officer of the NCRG. He is currently writing his thesis for his master's degree in liberal arts with a concentration in psychology at Harvard University.



NATIONAL CENTER FOR RESPONSIBLE GAMING

www.ncrg.org

Washington, D.C. Office
1299 Pennsylvania Avenue, NW, Suite 1175
Washington, DC 20004
202-552-2689

Boston Office
900 Cummings Center, Suite 418-U
Beverly, MA 01915
978-338-6610

©2013 National Center for Responsible Gaming (NCRG). All rights reserved.